# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302) 735-2111

Mr. Christopher Gardner, DAG
Mr. Evan Alban, DAG
Department of Justice
102 West Water Street
Dover, DE 19901

Mr. Edward C. Gill, Esquire
Law Office of Gill, Welsh, and
Chamberlain, P.A.
16 North Bedford Street
P.O. Box 824
Georgetown, DE 19947

Submitted: July 27, 2026
Decided:    August 12, 2026

**RE:    *State v. Garron D. Wescott – I.D. Nos. 2507007277 & 2507007410***

Counsel:

The State charges Defendant Garron Wescott with multiple drug dealing offenses stemming from the seizure of what it alleges to have been cocaine, fentanyl, and a mixture of the two substances.  Under *Brady v. Maryland*,[1] he seeks an order compelling disclosure of any investigations of, or disciplinary action taken against, the analytical chemist who tested the evidence.[2]

---

[1] 373 U.S. 83 (1963).

[2] In addition to Mr. Wescott's *Brady* demand, he sought an order compelling the State  (1) to identify all cases in the State of Delaware where the amount of drugs seized varied from the amount tested by the State, (2) to identify the duty station of a Trooper whose fingerprint was found on the packaging of the allegedly illegal substances, and (3) to provide the federal criminal history record of another other individual whose fingerprints were found on the packaging (who the State does not intend to call as a witness at trial).  At oral argument, Mr. Wescott declined to advance the demand that the State identify

The State responds that it possesses no documents—or information for that matter—that would be material to the defense or would otherwise constitute *Brady* material. On this record, Mr. Wescott identifies no basis to counter those assertions. Accordingly, the motion is denied for the reasons explained more fully below.

## THE *BRADY* STANDARD'S APPLICATION TO A TRIAL COURT

In *Brady v. Maryland*, the United States Supreme Court explained that due process requires prosecutors to disclose exculpatory evidence that is material to a defendant's defense and to do so far enough in advance of trial to enable the defendant to put it to use.[3] *Brady* material is evidence that which, if not disclosed to the defendant, would undermine confidence in the outcome of the trial.[4] In *Giglio v. United States*, the United States Supreme Court extended the rule to include impeachment material.[5] Accordingly, a prosecutor must disclose substantive evidence and impeachment material possessed by the prosecutor, the police, or others acting on the State's behalf.[6]

Most of the case law does not directly address how a *trial court* should examine *Brady* demands in the first instance. Rather, it typically examines *Brady* issues in the context of postconviction motions, and to a lesser extent, direct appeals. The distinction between evaluating alleged *Brady* violations pre-verdict versus post-trial is one of consequence, however. Namely, a court's review of a *Brady* issue on appeal or in a postconviction motion includes viewing the entire trial record. An available record

---

all Delaware cases from the past five years where there was a weight discrepancy – a request that was significantly overbroad in any event. As to the trooper's identify and location, the State has since identified him sufficiently to enable Mr. Wescott to subpoena him for trial if he desires. Finally, the State has also provided the other individual's federal criminal history in a supplemental production. Accordingly, the disputes over those requests are deemed withdrawn and overly broad, in part, and moot, in part.

[3] *Brady*, 373 U.S. at 87.
[4] *Wilson v. State*, 271 A.3d 733, 740 (Del. 2022) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).
[5] 405 U.S. 150, 154-55 (1972).
[6] *Ray v. State*, 280 A.3d 627, 646 (Del. 2022).

2

permits a court to consider the materiality of the evidence. Because no trial record is available prior to or during a trial, it begs the question of how can a court determine whether evidence withheld from the defense was important enough to make a difference at trial?[7] That, in turn, raises a further question: should a trial court even evaluate the materiality of the withheld evidence in a *Brady* dispute given that evidentiary gap?[8]

The United States Court of Appeals for the Ninth Circuit is one of the few courts to have addressed this distinction directly:

> [w]hether a jury would ultimately find the evidence convincing and lead to an acquittal is not the measuring rod here. Because no verdict was rendered, the usual "retrospective test, evaluating the strength of the evidence after trial has concluded" does not apply [in the trial context]. "[Rather,] the retrospective definition of materiality is appropriate only in the context of appellate review"; thus, "trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial."[9]

In summary, the element of materiality under *Brady*—meaning the withheld evidence is reasonably likely to make a difference in the result of the trial—must be examined in an appeal or postconviction review.[10] A trial court cannot prospectively

---

[7] *See* B. Bergman & T. Duncan, *Pretrial standard for required disclosure*, Everytrial Criminal Defense Resource Book § 5:5 (May 2026).

[8] The Superior Court, as a trial court, must apply *Brady v. Maryland* in the first instance when a dispute arises prior to trial. Delaware courts, which includes the undersigned, have inappropriately conflated the appellate standard of review with the trial standard by attempting a materiality determinization in the absence of any evidentiary record. S*ee, e.g.*, *State v. Gordon*, 2016 WL 7188107, at *1 (Del. Super. Dec. 9, 2016); *State v. Wright*, 2009 WL 3326717, at *3 (Del. Super. Sept. 30, 2009); *State v. Davis*, 2007 WL 4234453, at *2 (Del. Super. Nov. 28, 2007),

[9] *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) (first quoting *United States v. Olsen*, 704 F.3d 1172, 1183 & 1183 n.3 (9th Cir. 2013)(citing *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) for the proposition that "[t]he question before trial is not whether the government thinks that disclosure of the information or evidence ... might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed"); *see also Mills v. Commonwealth*, 718 S.W.3d 577, 585-87 (Ky. 2025) (holding, in 2025, *as an issue of first impression*, that a trial court must confine its mid-trial *Brady* analysis to consideration of whether undisclosed evidence was favorable to the defense and not consider its materiality from a result-changing perspective).

[10] In the context of appellate review, whether on direct appeal or on a collateral postconviction review, the Delaware Supreme Court has consistently applied the same standard to both when considering

answer that question, however, absent complete evidentiary context. As a result, the only practical way to harmonize these *Brady* analyses over separate stages of the proceedings is to require the State during the pre-trial and trial stages to disclose all evidence favorable to the defense. The State should not undertake the exercise of predicting whether it will likely make a difference in the outcome of the trial.

## DISCUSSION

Mr. Wescott's motion identifies a discrepancy between the weight of the drugs at the time of the seizure, as recorded by the police, and the amount later tested by the Division of Forensic Science, Chemistry Unit (hereinafter, "DFS"). He further alleges that the police identified the drugs differently when seizing them than DFS later confirmed them to be at the lab. Finally, Mr. Wescott alleges "previous issues" with the chemist who tested the substances at DFS. All three assumptions combine to provide the backdrop for Mr. Wescott's demand for the chemist's employment and disciplinary history.

In response, the State denied from the outset that it possessed *Brady* material regarding the chemist's employment history. At the motion hearing, however, the State conceded that it had not confirmed whether DFS had employment information favorable to the defense. Since the hearing, the State has produced two affidavits: one from DFS's

---

alleged *Brady* violations. For a violation to have occurred, (1) evidence must exist that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence must have been suppressed by the State; and (3) the defendant must have suffered prejudice because the State suppressed *material evidence that creates a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Gray v. State*, 126 A.3d 631, 2015 WL 5926151, at *3 (Del. Oct. 9, 2015) (TABLE) (direct appeal) (emphasis added); *see also Wright v. State*, 91 A.3d 972, 988 (Del. 2014) (applying same standard on appeal from the denial of Rule 61 motion). Furthermore, in cases where *Brady* material is disclosed mid-trial, a defendant-appellant must also show that the late-disclosed evidence could not have been used effectively at trial given the timing of the disclosure. *Cooper v. State*, 992 A.2d 1236, 2010 WL 1451486, at *1 (Del. 2010) (TABLE). In assessing prejudice on appeal, courts apply the same prejudice standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See United States v. Bagley*, 473 U.S. 667, 682 (1985) (holding that *Strickland* prejudice standard applies to *Brady* inquiry regardless of the specificity of the defendant's request).

director, and one from a human resource official from DFS's parent agency, the Department of Safety and Homeland Security. Both affiants attest that the chemist has never been disciplined for conduct related to her employment or for improper evidence handling.

Granted, if there was documentation regarding adverse disciplinary action taken against, or a finding against, a chemist for evidence mishandling, it would constitute impeachment material that must be disclosed under *Brady*.[11] But here, the State made reasonable inquiries with (1) the head of the chemist's agency, and (2) the agency's human resources department. Both attested, based on personal knowledge and inquiry, that the chemist at issue "has never been disciplined for conduct related to her employment [or] regarding evidence handling."

Mr. Wescott focuses on a Sussex County Superior Court case, *State v. Newcomb,* to support his argument.[12] He contends that the chemist in that case—the same chemist who tested the alleged drugs in his case—was placed on temporary administrative leave while DFS investigated a discrepancy in drug amounts between seizure and testing. There, as here, the defendant sought the chemist's employment records and an investigative report examining the matter. The State responded in writing that "there were not any materials responsive to *Brady*" in any documents in the State's possession.[13]

In response to Mr. Wescott's motion, the State includes the Sussex County Superior Court's finding after in camera review of documents in the *Newcomb* matter.[14] That letter provides the court's finding that none of the information required disclosure under

---

[11] *See State v. Coverdale*, 2017 WL 1405815, at *7 (Del. Super. April 18, 2017) (granting post-conviction relief where prosecutors falsely stated that State chemist had resigned due to lack of productivity when, in fact, he had resigned to avoid termination for inappropriate testing procedures and incorrect identification of drugs while under the threat of disciplinary action).
[12] I.D. No. 2506002267 (Del. Super.)
[13] D.I. 37 ¶ 5
[14] D.I. 37, Ex. C.

*Brady* in that case,[15] which is consistent with the affidavits the State submitted in this case.

Mr. Wescott also relies on the transcripts of two office conferences in separate cases where counsel discussed alleged evidence mishandling by DFS. Neither transcript belies the State's response that it has no documents that qualify as *Brady* material in Mr. Wescott's case, however. Nor do the discussions in those conferences make appropriate an in camera review of the chemist's employment files. Again, the prosecutor had a constitutional and ethical obligation to inquire and evaluate whether DFS possessed evidence that is favorable to the defense. It firmly represents that the State has no such information.

Lastly, Mr. Wescott relies on the Superior Court decision in *State v. Coverdale* in support of his motion.[16] There, in a postconviction relief case examining an alleged *Brady* violation, the prosecutor knew that material should have been disclosed prior to trial under *Brady* and *Giglio* but did not.[17] The chemist in that case had resigned under the threat of *pending* disciplinary action for a series of documented evidence handling infractions. In Mr. Wescott's case, there are firm representations that no such disciplinary history exists.[18]

As a final note, the Court recognizes Mr. Wescott's proffers (1) that the weights of the substances seized are different from the weights confirmed at testing by DFS, and (2) that the types of drugs recorded after field tests by the seizing agency differ from those

---

[15] *Id.*

[16] *See Coverdale*, 2017 WL 1405815, at *7.

[17] *Id.* at *2-3.

[18] To be clear, the State's representations that there has been no adverse action taken against the chemist is considered by the Court to encompass a representation that there are no current, unresolved disciplinary actions *pending* against the chemist. Such a circumstance, if it was the case, would align this case more closely with *Coverdale*. Nevertheless, in contrast to either misconduct findings or pending disciplinary actions, mere concluded investigations and reviews that discovered no evidence of misconduct or mistake on the part of the chemist would be too attenuated to constitute *Brady* material under the trial standard. Similarly, Mr. Wescott's request that the State identify all Delaware cases in the last five years where there was a weight discrepancy between seizure and testing is too broad and attenuated to constitute *Brady* material when applying the standard required of a trial court.

later confirmed by DFS. To be clear, this decision does not address whether evidence or questioning regarding these alleged discrepancies can be introduced into evidence or be used for impeachment purposes at trial. At first blush, they are likely to be fertile ground for cross-examination of the State's chemist and the seizing and collecting officers. Nevertheless, any disputes regarding admissibility of such evidence should be resolved by the trial judge under D.R.E. 104(a).

## CONCLUSION

For the foregoing reasons, Mr. Wescott's motion to compel production of *Brady* material is **DENIED**.

**IT IS SO ORDERED.**

Very truly yours,
/s/ Jeffrey J Clark
Resident Judge

7